IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

REDWOOD RESORT PROPERTIES,      §
LLC,                            §
                                §
              Plaintiff,        §
                                § Civil Action No. 3:06-CV-1022-D
VS.                             §
                                §
HOLMES COMPANY LIMITED,         §
                                §
              Defendant.        §

MEMORANDUM OPINION
AND ORDER

     In this removed action arising from a transaction to develop

and sell real property located in the Bahamas, defendant moves to

dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b), presenting the

questions whether plaintiff has stated claims on which relief can

be granted and has pleaded fraud with particularity.  For the

reasons that follow, the court grants defendant's motion in part

and denies it in part and allows plaintiff to replead.

I

     Plaintiff Redwood Resort Properties, LLC ("Redwood") and

defendant Holmes Company Limited ("Holmes") entered into a letter

agreement ("Letter Agreement") to work together exclusively with

the intent of entering into a joint venture to develop and sell

real property located on Crab Cay Island and Great Exuma, Bahamas.[1]

_____

[1]Consistent with the standards set out in more detail *infra* at
§ II, the court recounts the facts favorably to Redwood as the
nonmovant.  The court does not, however, accept legal conclusions
that are disguised as factual allegations.  Accordingly, to the
extent the court as a matter of law has interpreted the Letter

The "Portfolio" consisted of Crab Cay Island, a sea bed lease for construction of a marina, and property on Great Exuma that was necessary for construction of infrastructure to support development on, and to create an entrance to, the Island.  According to Redwood, after it entered into the Letter Agreement, expended substantial financial and human resources to create a development plan, and exercised an exclusive right and option to acquire an interest, and after Holmes obtained information from Redwood, Holmes announced that it was not interested in developing the property with Redwood but would do so itself.  In pursuing its own interests, Holmes attempted to employ or did employ advisors whom Redwood had retained for the joint development of the project, attempted to usurp or did usurp relationships that Redwood had developed, and attempted to use or has used proprietary development plans and data that Redwood created for the joint development.

The Letter Agreement, which contained binding and non-binding provisions, essentially divided Crab Cay Island into two parts. The first, known as the "Project," was to be developed by a venture between Redwood and Holmes (the "Venture").  The Venture involved developing a resort and a marina, a marketing and sales center, a beach club and spa, tennis courts, casitas, villas, a private club, and "hotel type" accommodations.  The second, known as the

---

Agreement in a manner that varies from how Redwood has characterized the agreement in its pleadings, the court summarizes the facts consistently with its legal interpretation.

"Enclave" and the reserved property, would be developed by Holmes but planned by the Venture in a manner that would complement the overall residential character of Crab Cay Island. Lots in the Enclave were to be sold in a manner that did not compete with the Venture's sales activities. Under the Letter Agreement, the Project and the Enclave developments were to be coordinated, and Redwood was responsible for creating the master development plan for coordinating the day-to-day operations of the Project within the approved budget.

Although, as noted, the Letter Agreement contained non-binding provisions, ¶¶ 19 and 9 included enforceable obligations that applied to the parties during the due diligence period and concerned Redwood's exclusive right and option to acquire an interest in the Portfolio. Additionally, under ¶ 1, Redwood and Holmes were obligated to work together in good faith during the due diligence period, using commercially reasonable efforts to determine all necessary information related to the development and sale of the Portfolio. Due diligence included satisfactory evaluation of the financial, physical, environmental, title, zoning, and entitlement aspects of the Portfolio. Paragraph 9 provided that Redwood would promptly prepare a definitive venture agreement that would contain the terms of the Letter Agreement and other covenants, conditions, and representations satisfactory to both parties. Under ¶ 19, Redwood and Holmes were obligated to use

good faith efforts to negotiate and execute a venture agreement. Paragraphs 1 and 17 required the parties to form the venture under Bahamian law as soon as practicable and to use their best efforts to consummate and effect the transactions contemplated under the Letter Agreement.

Paragraph 9 also contained the parties' acknowledgment that Redwood would incur substantial expenses preparing the venture agreement and performing due diligence. The parties therefore agreed that Holmes would deal exclusively with Redwood in the development and sale of the Portfolio. Paragraph 9 explicitly gave Redwood the exclusive right and option to acquire an interest in the Portfolio under the terms and conditions of the Letter Agreement until the earlier of October 30, 2005 or the date Redwood gave Holmes written notice that it would not pursue the transaction.

Redwood fully performed its obligations under the Letter Agreement. It prepared a draft venture agreement and provided it to Holmes before October 30, 2005. Redwood dedicated its own staff and hired engineers, architects, financial analyst, and other advisors ("the Advisors") to conduct due diligence and evaluate and create models for the financial, physical, environmental, zoning, and entitlement aspects of the Project. It sought involvement in the project by several hotel operators ("Hotel Operators"). Redwood's relationships with the Advisors and discussions with the

- 4 -

Hotel Operators, and its plans, marketing data, critical path timelines, projections, and other work product constituted original, confidential formulas, patterns, devices, or compilations of information ("Proprietary Information") that gave Redwood a competitive advantage over those who do not know it or use it, and it enhanced the value of the Portfolio by millions of dollars and added to the value of the Enclave and reserved property.

Redwood alleges that it exercised its exclusive option under ¶ 9 of acquiring an interest in the Portfolio, and that after it did so and began to proceed with development, Holmes began to equivocate about its interest in pursuing the Project. Holmes refused to sign the agreement that Redwood had tendered or any other document that contained changes or modifications acceptable to the parties. Holmes attended a meeting with Bahamian authorities that it had told Redwood had been cancelled. The parties disagreed over other development decisions, and Holmes eventually notified Redwood that it was proceeding in another direction. Holmes stopped discussing the Project with Redwood, started contacting Redwood's Advisors to work directly for Holmes, and began trying to steal the Project.

Redwood filed suit in Texas state court, asserting claims for (1) breach of contract, (2) breach of fiduciary duty, (3) unjust enrichment/quantum meruit/money had and received, (4) misrepresentation, (5) misappropriation of trade secrets; (6)

aiding and abetting, (7) tortious interference, and (8) interpleader. Holmes removed the case to this court on the basis of diversity of citizenship. It now moves to dismiss Redwood's complaint under Rule 12(b)(6) for failure to state a claim on which relief can be granted and under Rule 9(b) for failure to plead fraud with specificity.

                                   II

    In deciding Holmes's 12(b)(6) motion, the court construes Redwood's complaint[2] in the light most favorable to it, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in its favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court does not, however, 'rely upon conclusional allegations or legal conclusions that are disguised as factual allegations.'" *Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *14 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (quoting *Jeanmarie v. United States*, 242 F.3d 600, 602-03 (5th Cir. 2001)). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys.*

_____

[2]Because Redwood brought suit in state court, it filed a "petition" rather than a "complaint." The court will refer to the pleading as Redwood's "complaint."

- 6 -

*Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).[3]

"The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (quoting Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 598 (1969)). "[D]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate." *Id.* (internal quotation marks omitted). "The court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam) (Rule 12(c) decision).

III

Holmes first moves to dismiss Redwood's breach of contract claim.

A

Redwood alleges that Holmes breached the Letter Agreement by (1) failing to work with Redwood in good faith concerning the due diligence and development plan for the Project; (2) failing to execute and/or work with Redwood in good faith concerning the venture agreement and/or to form a Bahamian entity; (3) failing to recognize and/or repudiating Redwood's interest in the Portfolio,

---

[3]Redwood does not object to the court's consideration of the content of the Letter Agreement in deciding this motion. *See* P. Br. 12 n.17.

as vested by its exercise of the exclusive right and option to acquire an interest; (4) attempting to and/or actually engaging Redwood's Advisors to work on the Project; and (5) using the Proprietary Information for its own benefit rather than for the benefit of Redwood or a Bahamian entity jointly owned by Redwood and Holmes.

Holmes maintains that Redwood cannot state a breach of contract claim on which relief can be granted because ¶ 19 of the Letter Agreement establishes unequivocally that no binding terms exist for the development of Crab Cay Island without a final executed venture agreement; Redwood's interpretation of the exclusivity provision of ¶ 9 is facially unreasonable and would render ¶ 19 meaningless; Redwood has failed to allege that it properly exercised any exclusivity option; the complaint and Letter Agreement show that there was no meeting of the minds, consent to terms, or mutual assent to be bound; Redwood cannot state a claim for breach of a duty to negotiate in good faith; and Redwood's remaining breach of contract allegations are insufficient as a matter of law.

B

The court will consider together Holmes's related contentions that, under ¶ 19 of the Letter Agreement, there were no binding terms for developing Crab Cay Island without an executed venture agreement and that Redwood's interpretation of the exclusivity

provision of ¶ 9 is facially unreasonable and would render ¶ 19 meaningless.  Holmes argues that because the parties never executed a final venture agreement, no contract terms for developing Crab Cay Island became enforceable and, specifically, that Redwood did not acquire a vested interest in the Portfolio.  It maintains that ¶ 9 cannot reasonably be read to grant Redwood the exclusive right and option to acquire an interest in the Portfolio without agreeing with Holmes on the final terms of the venture and entering into a venture agreement.

As a threshold matter, the court observes that these arguments—while in many ways pertinent to the heart of the parties' dispute—do not appear to address Redwood's first and second grounds for alleging breach of contract: that Holmes failed to work with Redwood in good faith concerning the due diligence and development plan for the Project, and that Holmes failed to execute and/or work with Redwood in good faith concerning the venture agreement and/or to form a Bahamian entity.  Holmes recognizes that the provisions of the Letter Agreement that related to the parties' responsibilities during the due diligence period or as part of the negotiation process were binding and enforceable.  *See* D. Br. 9, 11.  These components of Redwood's breach of contract claim, viewed favorably to Redwood, appear to relate to Holmes's obligations

during the due diligence period and negotiation process.[4]   The court will therefore consider Holmes's contentions in determining whether the third, fourth, and fifth components of Redwood's breach of contract action fail to state a claim on which relief can be granted.

To decide the merits of these grounds of Holmes's motion, the court must interpret the Letter Agreement.   The court can consider the contents of the Letter Agreement even though the document has been submitted with Redwood's motion.   *Collins*, 224 F.3d at 498-99. The court does not accept as true legal conclusions pleaded in Redwood's complaint that are disguised as factual allegations. *Jackson*, 2006 WL 680471, at *14.   Therefore, the court may interpret the Letter Agreement as a matter of law at the Rule 12(b)(6) stage and apply that interpretation in deciding Holmes's motion, even though Redwood has offered a different characterization of the Letter Agreement in its complaint.

> Under Texas law, the court's primary concern when interpreting a contract is to ascertain the parties' true intentions as expressed in the instrument.   To achieve this objective, the court should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.   Language should be given its plain and grammatical meaning unless it

---

[4]This view of Holmes's motion is corroborated by analyzing other arguments that Holmes makes that *do* appear to address the first and second grounds of Redwood's breach of contract claim. *See infra* § III(C) and (D).

> definitely appears that the intention of the
> parties would thereby be defeated.  Where the
> contract can be given a definite legal meaning
> or interpretation, it is not ambiguous and the
> court will construe it as a matter of law.  A
> contractual provision is ambiguous when its
> meaning is uncertain and doubtful or if it is
> reasonably susceptible to more than one
> interpretation.  Whether a contract is
> ambiguous is a question of law for the court
> to decide by looking at the contract as a
> whole in light of the circumstances present
> when the contract was entered.

*Bank One, Texas, N.A. v. FDIC*, 16 F.Supp.2d 698, 707 (N.D. Tex. 1998) (Fitzwater, J.) (citations omitted).

Construing the Letter Agreement in its entirety, harmonizing and giving effect to all its provisions so that none is rendered meaningless, and affording the language of the agreement its plain and grammatical meaning, the court holds as a matter of law that only the limited provisions that are explicitly binding are enforceable through a breach of contract claim and that the remaining provisions are not enforceable, as here, absent execution by Redwood and Holmes of a final executed venture agreement.

The Letter Agreement evinces that the parties undertook comprehensive and mutually beneficial preliminary activities that they intended could lead to a final joint venture for the development and sale of real property located on Crab Cay Island and Great Exuma, Bahamas.  *See* D. App. 1.  Some activities were explicitly the subject of binding and enforceable contractual provisions.  The parties agreed that Redwood had the exclusive

- 11 -

right and option under the terms of the Letter Agreement to acquire an interest in the Portfolio until the earlier of October 30, 2005 or the date it notified Holmes in writing that it would not pursue the transaction, *id.* at 5, ¶ 9; Holmes would reimburse Redwood for its third party due diligence expenses if the parties did not execute a venture agreement, *id.* at 6, ¶ 11; except as required by law or with the other party's written consent, each party would generally keep confidential all non-public information obtained in connection with the due diligence review, *id.* at 6-7, ¶ 13; public announcements of the contemplated transactions would not be made except as required by law or with the other party's consent, *id.* at 7, ¶ 14; their responsibilities during the due diligence period were enforceable, *id.* at 7, ¶ 19; and each would use good faith efforts to negotiate and execute a venture agreement, *id.*

But the parties did not agree that in the Letter Agreement itself they had formed a binding and enforceable venture agreement or that Redwood could force the formation of such an agreement unilaterally under ¶ 9. Paragraph 19 specified that the provisions of the Letter Agreement were largely non-binding and that the parties had not reached a final agreement. This paragraph provided, in relevant part:

> Each party acknowledges that no agreement has been reached with respect to these intentions and that these intentions are under no circumstances legally binding on or enforceable against either party and neither party will assert otherwise in the absence of

> a fully-integrated definitive Venture
> Agreement that has been duly authorized,
> executed and delivered by all parties.

D. App. 7. Other provisions corroborated the largely non-binding nature of the relationship. Paragraph 1 referred to a venture that "will be formed to develop and sell" the property. *Id.* at 1. Paragraph 11 provided that Redwood would be entitled to recover third party due diligence expenses "[i]n the event that the Venture Agreement is not executed by the parties." *Id.* at 6. Under ¶ 15, the "Letter Agreement [could] be terminated and the transaction contemplated hereby may be abandoned at any time: (a) upon the written consent of each of the Parties hereto; (b) by either Party, if the Venture Agreement has not been executed by October 30, 2005." *Id.* at 7. Several other paragraphs refer to a "contemplated" transaction. *See, e.g., id.* at 7, ¶ 16. Viewed in its entirety, the Letter Agreement reflects the parties' intentions to pursue preliminary activities that could lead to a definitive and binding venture agreement that would be executed in the future. The Letter Agreement itself, however, was not that binding venture agreement.

Nor can ¶ 9 be interpreted in isolation to confer on Redwood the unilateral right to obtain an interest in the Portfolio in the absence of a final executed venture agreement or to support Redwood's claim that it had a vested interest as of October 30, 2005. Paragraph 9 provided, in relevant part:

- 13 -

> Promptly after the execution of this
> Agreement, Redwood will commence the
> preparation of a definitive venture agreement
> . . . [that] will contain the terms set forth
> in this Agreement and such other covenants,
> conditions, and representations as will be in
> form and substance satisfactory to both
> parties . . . . Redwood shall have the
> exclusive right and option to acquire an
> interest in the Portfolio pursuant to the
> terms and conditions recited herein until the
> earlier to occur of (i) October 30, 2005, or
> (ii) the date on which Redwood shall have
> given written notice to Holmes that it will
> not pursue the transaction contemplated
> hereby.

*Id.* at 5, ¶ 9.  When ¶ 9 is read as a component of the entire Letter Agreement, it is clear that the parties intended that Redwood would have the exclusive right and option, until the earlier of October 30, 2005, or the date it notified Holmes in writing that it would not pursue the contemplated transaction, to acquire an interest in the Portfolio under the terms of the Letter Agreement.  In other words, during this period Holmes could not enter into a venture agreement with anyone but Redwood or a Redwood affiliate.  But ¶ 9 cannot reasonably be read to confer on Redwood the right unilaterally to effect a binding venture agreement without Holmes's consent.

Accordingly, the court holds that Redwood cannot recover against Holmes for breach of contract on the basis that Holmes failed to recognize and/or repudiated Redwood's interest in the Portfolio.  Nor can Redwood recover on a ground that assumes that any part of the Letter Agreement except ¶¶ 9, 11, 13, 14, and 19

was binding and enforceable.   Because there is nothing in these paragraphs that contractually precluded Holmes from attempting to engage and/or actually engaging Redwood's Advisors to work on the Project or using the Proprietary Information for its own benefit after it paid for it, these components of Redwood's breach of contract claim must also be dismissed.[5]   And since the court has dismissed part of Redwood's breach of contract claim on this basis, it need not consider Holmes's arguments that Redwood has failed to allege that it properly exercised any exclusivity option and that the complaint and Letter Agreement show that there was no meeting of the minds, consent to terms, or mutual assent to be bound.

C

Holmes contends that Redwood cannot state a claim for breach of a duty to negotiate in good faith because the complaint fails to allege facts that adequately assert that Holmes violated such a duty.   It also posits that, under Texas law, agreements to negotiate in good faith are unenforceable as a matter of law. Holmes thus maintains that an alleged duty to negotiate in good

---

[5]In response to a footnote in Holmes's brief, Redwood asserts by way of footnote that there is a fact question whether under Texas law the non-binding provisions of the Letter Agreement became binding as a result of its partial performance.   *See* P. Br. 17 n.21.   Redwood does not assert, however, that the court should deny the motion to dismiss on this basis.   Because the court is granting Redwood leave to amend, Redwood can attempt to allege this as a basis for a breach of contract claim if it has adequate grounds to do so.   By contrast, Redwood does rely on a theory of part performance to avoid dismissal of its quasi-contract claims.   *See id.* at 21-22.

- 15 -

faith cannot be the basis for a breach of contract claim.

The court declines to dismiss this element of Redwood's breach of contract claim.   First, Redwood does not allege that Holmes breached a duty to *negotiate* in good faith; its asserts that Holmes failed to *work with* Redwood in good faith.  Compl. ¶ 58.[6]  Holmes's reliance on Texas law that precludes reliance on a duty to negotiate in good faith[7] is thus misplaced.   Second, viewing Redwood's complaint in the light most favorable to it, accepting as true all well-pleaded factual allegations, and drawing all reasonable inferences in its favor, the court is unable to say that Redwood can prove no set of facts in support of this component of its claim that would entitle it to relief.

D

Holmes argues that Redwood cannot recover for breach of contract on the following three predicate grounds because they are insufficient as a matter of law: that Holmes attempted to and/or

---

[6]At this stage of the case, the court assumes that the failure to *work with* another party in good faith is sufficiently distinct from a failure to *negotiate* in good faith as to render failure-to-negotiate cases inapposite.   The court does not exclude the possibility, however, that further development of the record may show that Redwood's claim is in effect one for failure to negotiate.

[7]*See John Wood Group USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 21 (Tex. App. 2000, pet. denied) ("[U]nder Texas law, an agreement to negotiate in the future is unenforceable, even if the agreement calls for a 'good faith effort' in the negotiations." (citing *Radford v. McNeny*, 129 Tex. 568, 104 S.W.2d 472, 474 (1937); *Maranatha Temple, Inc. v. Enter. Prods. Co.*, 893 S.W.2d 92, 104 (Tex. App. 1994, writ denied))).

actually engaged Redwood's Advisors to work on the Project; that Holmes failed to execute and/or work with Redwood in good faith concerning the venture agreement and/or to form a Bahamian entity; and that Holmes used the Proprietary Information for its own benefit rather than for the benefit of Redwood or a Bahamian entity jointly owned by Redwood and Holmes.   In view of its decision above, *see supra* § III(B), the court need only address whether the second ground——that Holmes failed to execute and/or work with Redwood in good faith concerning the venture agreement and/or to form a Bahamian entity——is sufficient.   Viewing Redwood's complaint in the light most favorable to it, accepting as true all well-pleaded factual allegations, and drawing all reasonable inferences in its favor, the court is unable to say that Redwood can prove no set of facts in support of this component of its claim that would entitle it to relief.

E

Accordingly, for the reasons stated, the court holds that Redwood's breach of contract claim must be dismissed for failure to state a claim on which relief can be granted insofar as it is based on the following components: that Holmes failed to recognize and/or it repudiated Redwood's interest in the Portfolio, as vested by its exercise of the exclusive right and option to acquire an interest; that Holmes attempted to and/or actually engaged Redwood's Advisors to work on the Project; and that Holmes used the Proprietary

Information for its own benefit rather than for the benefit of Redwood or a Bahamian entity jointly owned by Redwood and Holmes. The court declines to dismiss the balance of Redwood's breach of contract claim.

IV

Holmes also moves to dismiss Redwood's breach of fiduciary duty claim.

A

Redwood asserts that Holmes owed it a fiduciary duty and duty of trust arising out of Holmes's receipt of the Proprietary Information from Redwood in confidence, the special trust and confidence placed in Holmes by Redwood induced by the binding provisions of the Letter Agreement, and/or Redwood's exercise of the exclusive right/option to acquire an interest. To plead that Holmes breached this duty, Redwood relies on the same grounds as those on which it bases its breach of contract action. Holmes argues that the claim should be dismissed because Redwood has failed to allege facts that support the existence of a duty or the breach of the duty. Redwood responds that it has pleaded the existence of a fiduciary duty based on the possibility that Redwood and Holmes entered into a joint venture and on the basis that Redwood created Proprietary Information in confidence and that the information provided Holmes with trade secrets.

B

Texas courts recognize two types of fiduciary relationships: formal and informal fiduciary relationships.  *Opus S. Corp. v. Limestone Constr., Inc.*, 2003 WL 22329033, at * 3 (N.D. Tex October 6, 2003) (Fish, C.J.).  "A formal fiduciary relationship arises as a matter of law, for example, between an attorney and a client, a principal and an agent, or between partners or joint venturers."  *Id.* (citing *Imperial Premium Fin., Inc. v. Khoury*, 129 F.3d 347, 353 (5th Cir. 1997)).  An informal relationship may give rise to a fiduciary duty where one person trusts in and relies on another, whether the relation is a moral, social, domestic, or purely personal one.  *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex. 1997).

Redwood has failed to plead that a fiduciary relationship arose from its status as Holmes's joint venturer because, as explained *supra* at § III(B), Redwood could not effect this relationship absent a final executed venture agreement, and it is undisputed that the parties did not enter into such an agreement. Additionally, Redwood has not established that it can recover for breach of fiduciary duty on any basis except the allegation that Holmes used the Proprietary Information for its own benefit rather than for the benefit of Redwood or a Bahamian entity jointly owned by Redwood and Holmes.

Holmes does not dispute that a duty not to disclose

confidential or proprietary information can arise from a
confidential relationship. Instead, it maintains that Redwood has
failed to allege when or how it breached any duty of
confidentiality on this basis. *See* D. Reply Br. 7. Viewing
Redwood's complaint in the light most favorable to it, accepting as
true all well-pleaded factual allegations, and drawing all
reasonable inferences in its favor, the court is unable to say that
Redwood can prove no set of facts in support of this basis for its
breach of fiduciary duty claim that would entitle it to relief.
Accordingly, the court dismisses Redwood's breach of fiduciary duty
claim to the extent based on any predicate other than that Holmes
used the Proprietary Information for its own benefit rather than
for the benefit of Redwood or a Bahamian entity jointly owned by
Redwood and Holmes. The court denies otherwise denies the motion.

V

Holmes moves to dismiss Redwood's quasi-contractual claims for
quantum meruit, unjust enrichment, and money had and received.

A

Redwood alleges that, if the court concludes that there was no
valid contract between Redwood and Holmes, it should hold that
Holmes's acts and omissions "render it unjust, unconscionable,
and/or unfair for [Holmes] to keep all of the profits flowing from
a development of the Portfolio, to the exclusion of [Redwood]."
Compl. ¶ 68. Holmes maintains that, if there is no contract to

develop Crab Cay Island, it owed no duty to Redwood to give it any of the profits; to the extent Redwood seeks reimbursement of its due diligence costs, the enforceable provisions of the Letter Agreement cover this subject and Redwood concedes in its complaint that Holmes has already paid the agreed reimbursement; and the enforceable provisions of the Letter Agreement cover the subject matter of and thus negate Redwood's quasi-contract claims.  Holmes also posits that a claim for unjust enrichment is not an independent cause of action, and that Redwood cannot recover for money had and received because it has not alleged that Holmes holds money that belongs to Redwood but at most alleges that it is entitled to future profits from the Project.  Redwood acknowledges the general rule that a party cannot recover for quasi-contract where a contract governs, but it maintains that it is conceivable that it could recover on this basis, and it argues that there is an exception to this rule when one party partly performs but the other party's material breaches prevent completion of the contract.

B

1

The court dismisses Redwood's claim for unjust enrichment. Unjust enrichment "is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual

obligation to repay." *Doss v. Homecoming Fin. Network, Inc.*, ___ S.W.3d ___, 2006 WL 3093631, at *2 n.4 (Tex. App. Nov. 2, 2006, no pet. h.) (citing *City of Corpus Christi v. Heldenfels Bros.*, 802 S.W.2d 35, 40 (Tex. App. 1990), *aff'd*, 832 S.W.2d 39 (Tex. 1992)). Accordingly, the court holds that Redwood has failed to state an unjust enrichment claim on which relief can be granted, and it dismisses this action.

2

The court is unable to dismiss Redwood's quantum meruit claim. Holmes maintains that, if there is no contract to develop Crab Cay Island, it owed no duty to Redwood to give it any of the profits. This argument is inadequate to support dismissal.

> To recover on a claim of quantum meruit, a claimant must prove that (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*Tricon Tool & Supply, Inc. v. Thumann*, ___ S.W.3d ___, 2006 WL 3316993, at *4 (Tex. App. Nov. 16, 2006, no pet. h.) (internal quotation marks omitted) (quoting *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)). Redwood alleges in support of this claim that it conferred substantial benefits on Holmes in connection with the development of the

Project. *See* Compl. ¶ 69. The court is unable to say that Redwood can prove no set of facts in support of this claim that would entitle it to relief.[8]

Nor can the court dismiss the claim based on the scope of the Letter Agreement. The "substantial benefits" that Redwood has pleaded conceivably relate to parts of the parties' relationship that were not covered by an enforceable provision of the Letter Agreement. For example, Holmes relies on ¶ 11 of the Letter Agreement to argue that the subject matter of Redwood's claim is covered. It is possible under the pleadings that the benefit that Redwood conferred on Holmes extends beyond the due diligence efforts governed by ¶ 11. The court is therefore unable to say that there is no set of facts that would permit Redwood to recover for quantum meruit, and it denies the motion to dismiss in this respect.

3

The court is also unable to say that Redwood's action for money had and received must be dismissed in its entirety.

First, as with Redwood's quantum meruit claim, this action may

---

[8]Redwood asserts two paragraphs later that it is seeking Holmes's profits, *see* Compl. ¶ 71, which may undermine its quantum meruit claim in that the measure of damages it seeks does not appear to correspond to a claim for which relief is measured by the value of the services rendered. In its motion, Holmes at least inferentially notes this potential problem by pointing out that Redwood seeks to recover lost profits. At the Rule 12(b)(6) stage, however, the court will construe Redwood's complaint favorably to allege a quantum meruit claim on which relief can be granted.

rest on grounds that are not covered by the Letter Agreement.

Second, under Texas law, money had and received is

> an equitable action that may be maintained to
> prevent unjust enrichment when the defendant
> obtains money, which in equity and good
> conscience belongs to the plaintiff.  A cause
> of action for money had and received is not
> based on wrongdoing but instead, looks only to
> the justice of the case and inquires whether
> the defendant has received money which
> rightfully belongs to another.   It is
> essentially an equitable doctrine applied to
> prevent unjust enrichment.

*Doss*, ___ S.W.3d at ___, 2006 WL 3093631, at *3 (citations and internal quotation marks omitted).  The court is unable to conclude that Redwood has not stated a claim against Holmes to recover money that Holmes has received that rightfully belongs to Redwood.

The court recognizes that to some extent——that is, insofar as Redwood seeks to recover Holmes's future profits from developing Crab Cay Island——a claim for money had and received may be subject to dismissal.

> The chose-in-action for money had and received
> fell within the scope of indebitatus
> assumpsit.  Additionally, the concept of
> "money" for purposes of the claim has come to
> mean more than mere coins or dollar bills.
> For instance[ ], various jurisdictions, and at
> least one Texas intermediate court of appeals,
> have indicated that the "equivalent" of money,
> property received as money, or property
> converted into money before suit may also be
> recovered via the cause of action.

*Tri-State Chems., Inc. v. W. Organics, Inc.*, 83 S.W.3d 189, 194 (Tex. App. 2002, pet. denied) (citations omitted).  Future profits

would not appear to qualify as money, the equivalent of money, property received as money, or property converted into money before suit.   The court has not found through its own research any indication that Texas currently allows a recovery of lost future profits in an equitable action for money had and received.   But as Redwood has pleaded this claim, its complaint refers to at least some benefits that Holmes has already received.   *See* Compl. ¶ 70. The court is unable at this stage of the case to conclude that Redwood cannot recover under any set of facts for money had and received, and it denies Holmes's motion in this respect.

4

The court dismisses Redwood's quasi-contractual claim for unjust enrichment but declines to dismiss its actions for quantum meruit or money had and received.

VI

Holmes seeks dismissal of Redwood's claim for misappropriation of trade secrets.

A

Redwood alleges that the Proprietary Information constituted trade secrets under Texas law and that Holmes misappropriated them. Holmes posits that Redwood has not adequately pleaded that any of the information is a trade secret or pleaded the elements of a misappropriation claim.   It also contends that, under ¶ 11 of the Letter Agreement, once Holmes reimbursed Redwood for the actual

amounts Redwood paid for due diligence expenses, the results of all these efforts, including work product producing the results, became Holmes's exclusive property.   Redwood responds that Holmes's reliance on ¶ 11 improperly assumes that Holmes validly repudiated Redwood's exercise of its exclusive right and option under ¶ 9 and ignores the confidentiality provision of ¶ 13 of the Letter Agreement.   It posits that, until it is determined that Holmes did not breach the Letter Agreement, Redwood has the right to assert that Holmes cannot use the Proprietary Information.

B

For the reasons explained *supra* at § III(B), the court rejects Redwood's attempt to avoid ¶ 11 by relying on the premise that Holmes breached the Letter Agreement by repudiating Redwood's option under ¶ 9.   Under ¶ 11, Holmes purchased the results of the due diligence efforts, including work product that produced these efforts.

This leaves the part of Redwood's claim that is based on ¶ 13.   Redwood makes no attempt to explain how information Holmes obtained under the terms of ¶ 13—a confidentiality proviso—constitutes a trade secret.   As pleaded, the misappropriation claim makes no reference to ¶ 13.   *See* Compl. ¶¶ 76-77.   And the term "Proprietary Information," as used in the complaint, appears to relate to due diligence work product covered by ¶ 11.   *See* Compl. ¶¶ 42-43.   Accordingly, although Redwood may

be able to do so by way of amended complaint, it has not at this point stated a claim for misappropriation of trade secrets on which relief can be granted, and this claim is dismissed.

VII

Holmes moves to dismiss Redwood's claim for tortious interference/aiding and abetting.

A

Redwood alleges that Holmes knowingly interfered with Redwood's relationships and/or contracts with the Advisors by asking them to work for Holmes and/or hiring them to do so. Holmes maintains that Redwood has not adequately pleaded this claim because the complaint alleges that Holmes terminated the parties' relationship and, once the Letter Agreement was terminated, Holmes had the right to discuss the Project with other development partners. Holmes also complains that Redwood's other allegations are vague and conclusory and thus insufficient to plead a claim for tortious interference or aiding and abetting as to other advisors. Redwood opposes dismissal, contending that it is conceivable that Holmes breached the Letter Agreement, and that the complaint alleges that Redwood hired the Advisors on a confidential, exclusive basis.

B

Under Texas law, "[a] claim of tortious interference with existing contracts or business relationships requires (1) an

existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damage or loss." *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 2002 WL 1751381, at *25 (N.D. Tex Apr. 4, 2002) (Fitzwater, J.) (citing *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)). Even assuming that the Letter Agreement cannot serve as the basis for the first element of this claim, the complaint is not restricted to that contract. The court is unable to say that there is no set of facts that would permit Redwood to recover on this basis, and it denies Holmes's motion in this respect.

## VIII

Finally, Holmes moves under Rule 12(b)(6) to dismiss Redwood's interpleader claim.

### A

Redwood has brought an interpleader claim by tendering into the registry of the court for distribution to the Advisors the sum of $195,404.00 that Holmes paid Redwood under ¶ 11 of the Letter Agreement. Redwood alleges that "various Advisors have made demands on Redwood for payment and it is possible that monies in excess of the Contribution Requirement will be due." Compl. ¶ 91. It asks the court to distribute these funds to the Advisors. Holmes moves to dismiss this claim on the grounds that Redwood is apparently attempting improperly to undo the fact that Holmes paid

it in full for the Proprietary Information, and that Redwood has not pleaded any other proper claims in this case, i.e., all of Redwood's claims are subject to dismissal.  Redwood responds that Holmes is again relying on an argument that assumes that Holmes did not breach the Letter Agreement by failing to recognize Redwood's exercise of its exclusive right and option under ¶ 9.  It argues that the interpleader action ensures that the Advisors will be paid, without Redwood's waiving its right to assert that Holmes was in prior breach of contract.

B

The sole legal basis for Redwood's interpleader claim is the premise that Holmes breached the Letter Agreement by failing to recognize Redwood's exercise of the option under ¶ 9.  The court has interpreted ¶ 9 to preclude this assertion.  *See supra* § III(B).  Accordingly, although Redwood may be able through amendment to state a viable interpleader action, it has not yet done so, and the court dismisses this action for failure to state a claim on which relief can be granted.

IX

The court now turns to Holmes's motion to dismiss under Rule 9(b).

Holmes argues that Redwood's misrepresentation claim must be dismissed because it has failed to plead fraud with particularity. Redwood essentially concedes that it did not comply with Rule 9(b),

- 29 -

but it points out that it filed this lawsuit in state court, where the Rule did not apply.  Redwood asserts that the court should deny Holmes's motion and allow it to replead.

The court agrees with Holmes that the complaint does not comply with Rule 9(b), and it therefore grants Holmes's motion to dismiss Redwood's misrepresentation claim.  As explained *infra* at § X, the court will allow Redwood to file an amended complaint in order to comply with the Rule.

X

Essentially, the result of the court's present decision is to limit the scope of Redwood's lawsuit to contractual, quasi-contractual, and tort claims that pertain to the parties' conduct during or arising from the pre-venture agreement due diligence and negotiation process periods of their relationship.  At least part of the lawsuit can continue under these restrictions.  In opposing Holmes's motion to dismiss, however, Redwood has requested leave to amend.  The court grants the request.

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*In re Am. Airlines, Inc. Privacy Litig.*, 370 F.Supp.2d 552, 567-68

- 30 -

(N.D. Tex. 2005) (Fitzwater, J.) (brackets omitted) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  It does not appear to the court that all of Redwood's pleading defects are incurable, and Redwood has not advised the court that it is unwilling or unable to amend in a manner that will avoid dismissal.  Accordingly, within 30 days of the date this memorandum opinion and order is filed, Redwood may file an amended complaint.

                    *      *      *

    For the reasons set out, the court grants in part and denies in part Holmes's June 30, 2006 motion to dismiss.  Redwood may file an amended complaint within 30 days of the date this memorandum opinion and order is filed.

    **SO ORDERED.**

    November 27, 2006.


                    _____
                    SIDNEY A. FITZWATER
                    UNITED STATES DISTRICT JUDGE